THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES B. O'KEEFE, Relator, *v.* MARK GRAVES and Others, as Commissioners Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, December 29, 1937.

*Daniel McNamara, Jr.* [*William J. Calise* and *Israel I. Davidson* of counsel], for the relator.

*John J. Bennett, Jr., Attorney-General* [*Joseph M. Mesnig, Assistant Attorney-General*, of counsel], for the respondents.

Determination annulled, with fifty dollars costs and disbursements.

Relator is the regularly retained attorney for the Federal Home Owners' Loan Corporation. His salary is not subject to tax under *New York ex rel. Rogers* v. *Graves* (299 U. S. 401).

HILL, P. J., McNAMEE and BLISS, JJ., concur; CRAPSER, J., dissents, with an opinion in which HEFFERNAN, J., concurs.

CRAPSER, J. (dissenting). The relator is a resident of the city of Long Beach, N. Y. He duly made a personal income tax return pursuant to the Tax Law of the State of New York and paid an income tax of $57.28 for the year 1934. Thereafter and on or about August 16, 1935, he duly made application, pursuant to section 374 of the Tax Law, for a refund of the foregoing tax which was denied by the Tax Commission.

He bases his claim upon the fact that the tax paid for the year 1934 was based on a net income of $2,908.54, of which $2,246.66 was salary earned as an attorney at law in the employ of the Home Owners' Loan Corporation, which corporation the relator alleges is an instrumentality of the United States government and that such part of his income as was earned as an employee of the Home Owners' Loan Corporation is exempt from the New York State income tax.

Section 4, subsection (j), of the Home Owners' Loan Act of 1933 (June 13, 1933, chap. 64, 48 U. S. Stat. at Large, 128; U. S. Code, tit. 12, §§ 1461–1468) reads: " The Corporation shall have power to select, employ, and fix the compensation of such officers, employees, attorneys, or agents as shall be necessary for the performance of its duties under this Act, without regard to the provisions of other laws applicable to the employment or compensation of officers, employees, attorneys, or agents of the United States. No such officer, employee,

attorney, or agent shall be paid compensation at a rate in excess of the rate provided by law in the case of the members of the Board. The Corporation shall be entitled to the free use of the United States mails for its official business in the same manner as the executive departments of the Government, and shall determine its necessary expenditures under this Act and the manner in which they shall be incurred, allowed, and paid, without regard to the provisions of any other law governing the expenditure of public funds. The Corporation shall pay such proportion of the salary and expenses of the members of the Board and of its officers and employees as the Board may determine to be equitable, and may use the facilities of Federal Home Loan Banks, upon making reasonable compensation therefor as determined by the Board."

The term "Board" as used above means the Federal Home Loan Bank Board.

Under this statutory authority, relator received a verbal appointment from the Metropolitan District Counsel of the corporation without the necessity of participating in a competitive civil service examination. By statute, provisions of law applicable to officers and employees of the United States had no application to relator's employment.

The Home Owners' Loan Act is explicit in limiting the loaning functions of the corporation to a period which expired on June 13, 1936, last. The corporation was, therefore, intended to be only a temporary agency functioning to aid distressed home owners during an emergency period. Its employees, similarly, were intended to have no status other than that of employees of an interim agency with a definitely limited tenure.

In *New York ex rel. Rogers* v. *Graves* (299 U. S. 401; 57 S. Ct. 269) the court said: "The power of the Federal government to use a corporation as a means to carry into effect the substantive powers granted by the Constitution has never been doubted since *McCulloch* v. *Maryland*, 4 Wheat. 316."

In *Dobbins* v. *Commissioners of Erie County* (16 Pet. 435, 448, 449) the court held that a State was without authority to tax the instruments, or compensation of persons, which the United States may use and employ as necessary and proper means to execute its sovereign power.

In *Metcalf & Eddy* v. *Mitchell* (269 U. S. 514) the court says: "Just what instrumentalities of either a State or the Federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune

from the taxing power of the other. * * * Experience has shown that there is no formula by which that line may be plotted with precision in advance. But recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation. Its origin was due to the essential requirement of our constitutional system that the Federal government must exercise its authority within the territorial limits of the States; and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other. * * *

" In a broad sense, the taxing power of either government, even when exercised in a manner admittedly necessary and proper, unavoidably has some effect upon the other. * * * Taxation by either the State or the Federal government affects in some measure the cost of operation of the other.

" But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference each with the other; and that limitation cannot be so varied or extended as seriously to impair either the taxing power of the government imposing the tax * * * or the appropriate exercise of the functions of the government affected by it."

The fact that the Federal government has the power to undertake such an enterprise as is provided for by the Home Owners' Loan Act and that it is undertaken for what the Federal government conceives to be a public benefit does not establish immunity from taxation by the State of the income earned by its employees. (*Helvering* v. *Powers*, 293 U. S. 214; *South Carolina* v. *United States*, 199 id. 437; *Indian Motocycle Co.* v. *United States*, 283 id. 570, 575.)

*South Carolina* v. *United States* (199 U. S. 437) and *Ohio* v. *Helvering* (292 id. 360) were both cases where the dispensation of liquor had been taken over by an authority created by a State and claimed their exemption from the Federal right to tax under the revenue act. The court, while recognizing the power of the State to enter the enterprise, denied the exemption, as the State could not by engaging in a business of that sort, withdraw it from the taxing power which the Constitution vested in the National government.

Immunity from taxation can exist only where the taxation is a direct burden laid upon the instrumentality of government; it does not exist where only a remote influence upon the exercise of the

functions of government is found. (*Willcuts* v. *Bunn*, 282 U. S. 216; *Fox Film Corporation* v. *Doyal*, 286 id. 128.)

The business of the Home Owners' Loan Corporation is a business that has always been carried on by private corporations or individuals.

The tax has been imposed on the income of the relator who is neither an officer nor employee of the United States government, and whose only relation to it is that he has contracted with the Home Owners' Loan Corporation to furnish his services to them.

It cannot be said that the tax imposed upon the relator is imposed upon an agency of government from any technical sense, and the tax itself cannot be deemed to be an interference with government or an impairment of the efficiency of its agency in any substantial way. (*Fidelity & Deposit Co.* v. *Pennsylvania*, 240 U. S. 319; *Railroad Co.* v. *Peniston*, 18 Wall. 5; *Gromer* v. *Standard Dredging Co.*, 224 U. S. 362; *Baltimore Shipbuilding Co.* v. *Baltimore*, 195 id. 375.)

I am not unmindful of the decision in *New York ex rel. Rogers* v. *Graves*, decided on January 4, 1937 (299 U. S. 401; 57 S. Ct. 269). There was no question in that case but what the building and operation of the Panama canal were governmental functions and that Congress had constitutional power for national defense and to regulate commerce. The court in that case held that the railroad was an auxiliary primarily designed and used to aid in the creation, management and operation of the Panama canal and was so closely related to it as to make all of its services a governmental function which the State could not in any way touch by its taxing power.

The corporation by which the relator was employed was limited as to time and was not a governmental function of such a character as to prevent the State from taxing the income of its employees under its law.

The final determination of the State Tax Commission should be confirmed, with costs.

HEFFERNAN, J., concurs.